Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Meghan E. George (274525)
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JEREMIAH MANIQUIZ, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

vs.

KAMI VISION INCORPORATED d/b/a YI TECHNOLOGIES, and DOES 1-20,

Defendant.

Case No.

**CLASS ACTION COMPLAINT FOR STATEWIDE OR NATIONWIDE RELIEF**

(1) Violations of Unfair Competition Law (Cal. Business & Professions Code § 17200 *et seq*.)

(2) Violations of Automatic Renewal Law (Cal. Business & Professions Code § 17600, *et seq.)*

(4) Conversion (Common Law)

(5) Violations of Electronic Funds Transfer Act (15 U.S.C. §1693 *et seq.*)

**Jury Trial Demanded**

Plaintiff JEREMIAH MANIQUIZ ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, alleges the following against Defendant KAMI VISION INCORPORATED d/b/a YI TECHNOLOGIES ("Defendant"), upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters.

## INTRODUCTION

1. This Class Action Complaint is brought pursuant to the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), and California common law conversion.

2. Plaintiff, individually and on behalf of all others similarly situated, seeks damages, injunctive relief, restitution, and all other available remedies resulting from Defendant's practice of enrolling consumers in automatically renewing subscription plans, making it difficult or impossible to cancel, continuing to debit consumer bank accounts after cancellation and revocation of authorization, refusing to issue refunds, and wrongfully retaining consumer funds.

3. Plaintiff also seeks relief under California's Automatic Renewal Law because Defendant enrolled Plaintiff and Class Members in a continuous, automatically renewing monthly cloud subscription plan without providing clear and conspicuous automatic renewal terms, without obtaining affirmative consent to those terms, without providing the statutorily required acknowledgment, and while continuing to charge consumers after cancellation, in violation of Cal. Bus. & Prof. Code § 17602(a).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants transact business in this district, directed their conduct

toward consumers in this district, and a substantial portion of the unlawful conduct occurred in this district.

**THE PARTIES**

5. Plaintiff is a natural person and consumer who maintained one or more bank accounts from which Defendants initiated the disputed electronic fund transfers. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1693a(6).

6. Defendant KAMI VISION INCORPORATED, a corporation registered in California, operates under the trade name YI TECHNOLOGIES. YI Technologies was created by Kami Vision around 2018 to offer smart home products with enhanced features such as 5GHz Wi-Fi and improved night vision, distinguishing Kami's products from YI's budget-friendly offerings. Both Kami Vision and YI Technologies share core technology, infrastructure, and apps, including the YI Home and Kami Home apps, and both brands are part of the same corporate ecosystem under Kami Vision Incorporated. For the purposes of this Complaint, Kami Vision and YI Technologies will be referred to collectively as "Defendant", as they are part of the same corporate entity and operate together in offering products and services. Both Kami Vision and YI Technologies are jointly responsible for the billing and auto-debit practices alleged herein.

7. The true names and capacities of DOES 1–20 are presently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when ascertained.

8. Plaintiff is informed and believes, and thereon alleges, that each Defendant acted as the agent, employee, and/or joint venturer of the others, and that each act or omission was within the scope of such agency or employment.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant controlled, directed, approved, and/or ratified the policies, practices, and procedures that gave rise to the unauthorized debits, continued billing after cancellation, false refund receipts, and wrongful retention of consumer funds described herein.

10. Plaintiff is further informed and believes, and thereon alleges, that the unlawful practices alleged in this Complaint were uniform, systemic, and carried out pursuant to Defendant's policies and business practices, which emanated from Defendant's headquarters in California and were applied to consumers nationwide.

11. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendant and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all of Defendant's employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendant.

12. Plaintiff is informed and believes, and thereon alleges, that said Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all its employees, agents, and/or third parties acting on its behalf, in proximately causing the damages herein alleged.

13. At all relevant times, Defendant ratified each and every act or omission complained of herein. At all relevant times, Defendant, aided and abetted the acts and omissions as alleged herein.

## FACTUAL ALLEGATIONS

14. Plaintiff Jeremiah Maniquiz and his wife subscribed to Defendant's Kami Cloud subscription for a security camera system. At all times relevant, Plaintiff paid for and maintained this subscription directly through Defendant, using a bank account that Defendant was authorized to debit for monthly charges.

15. Plaintiff subscribed to Defendant's Kami Cloud subscription for a security camera system. At all times relevant, he paid for and maintained service directly through Defendant, using a bank account that Defendant was authorized to debit for monthly charges.

16. Plaintiff's subscription to Defendant's service was a continuous, automatically renewing monthly plan for which Defendant automatically debited Plaintiff's designated checking account. Plaintiff never received any clear and conspicuous disclosure of automatic

renewal terms, cancellation terms, or recurring billing terms prior to enrollment. Defendant also failed to provide Plaintiff with an acknowledgment email or other written confirmation containing the automatic renewal terms, cancellation policy, or information regarding how to cancel, as required by Bus. and Prof. Code § 17602(a)(2).

17. On January 8, 2022, Plaintiff canceled his subscription due to his military deployment. Despite canceling the service, Defendant continued to debit Plaintiff's account, and Plaintiff followed up with Defendant to request a refund. Plaintiff received no proper confirmation of cancellation and no acknowledgment that the subscription was properly terminated.

18. On or about July 2023, Plaintiff attempted to cancel his subscription once again, as his camera was no longer working and the service was not needed. Despite the cancellation, Defendant continued to deduct money from Plaintiff's bank account on a recurring basis. Defendant's unauthorized charges continued well after cancellation and into 2025.

19. Plaintiff expected, based on Defendant's representations, that no further recurring charges would be placed on his account after the cancellation in July 2023. Defendant failed to provide any cancellation confirmation that complied with Bus. and Prof. Code § 17602(a)(3) and failed to provide any mechanism for cancellation that met the statutory requirement of being easy to use, cost-effective, and timely.

20. Despite Plaintiff's attempts to resolve the issue through Defendant's customer support, Defendant failed to respond adequately, making it difficult for Plaintiff to receive a refund or resolve the issue.

21. During Plaintiff's repeated efforts to cancel, Defendant's customer support representatives actively diverted and obstructed cancellation by offering promotions, continued services, and inducements, including offers of free cameras and discounted services, despite Plaintiff's multiple express requests to cancel. Defendant failed to honor Plaintiff's cancellation requests or provide a compliant cancellation confirmation.

22. Defendant continued to debit Plaintiff's bank account on a recurring basis after cancellation, including unauthorized charges on or about June 20, 2025 and July 20, 2025, in the amount of approximately $7.99 per month, as reflected in Plaintiff's bank records. These

recurring charges ceased only after Plaintiff was forced to change his debit card, not because Defendant honored or processed the cancellation.

23. On November 20, 2024, Plaintiff's bank account was charged $9.99 for the subscription, despite the cancellation request in July 2023. Plaintiff's bank records reflect the unauthorized charge, which Defendant failed to reverse or correct.

24. Defendant's conduct, including failing to process a refund, continuing to debit Plaintiff's account after cancellation, and not providing proper cancellation confirmation, relies on false assurances that mislead consumers into believing their accounts are settled when, in fact, they are not.

25. Plaintiff is informed and believes, and thereon alleges, that Defendant has engaged in these practices repeatedly against numerous consumers, creating a continuing threat of harm to the public unless enjoined by this Court.

26. Plaintiff alleges that Defendant's representations and omissions were part of a common scheme to mislead consumers, extract payments after cancellation, and retain funds that rightfully belonged to its customers.

27. Plaintiff would not have continued to do business with Defendant had he known that Defendant would misrepresent its billing practices, debit his account after cancellation, and fail to honor refund confirmations.

28. Had Defendant truthfully represented its billing and refund practices, Plaintiff would have taken immediate steps to protect his account and would never have permitted Defendant to access his bank information after cancellation.

29. Plaintiff gave his money to Defendant based on the representations that charges would cease upon cancellation and that refunds would be timely credited. Defendant benefited from falsely representing its practices. Plaintiff received nothing of benefit in exchange, while Defendant retained and used funds that rightfully belonged to Plaintiff.

30. Plaintiff is informed and believes, and thereon alleges, that had he not intervened by disputing the charges with his bank, Defendant would have continued to initiate unauthorized and recurring debits from his account.

31. Relying on Defendant's assurances, Plaintiff believed that his account was closed

as of July 2023 and that no further charges would be imposed once the service was canceled. Defendant's continued billing through June and July 2025, stopping only after Plaintiff changed his debit card, caused Plaintiff to lose money, incur overdraft and account disruption risks, and suffer ongoing uncertainty and stress. In addition to these financial harms, Plaintiff experienced significant stress, frustration, and emotional distress from the uncertainty of whether further withdrawals would occur, the embarrassment of declined payments, and the time and energy required to dispute the charges and protect his account.

32. Plaintiff is informed and believes, and thereon alleges, that Defendant's failure to provide mandatory automatic renewal disclosures, obtain affirmative consent, provide an acknowledgment, or honor repeated cancellation requests, combined with Defendant's practice of obstructing cancellation through diversionary offers and inducements, constituted violations of the ARL. Defendant also continued to charge consumers on automatically renewing plans after cancellation, without any statutory notice or post-cancellation confirmation, thereby violating Bus. and Prof. Code § 17602(a)(3).

## CLASS ACTION ALLEGATIONS

33. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

34. Plaintiff brings this action, on behalf of himself and all others similarly situated, and thus, seeks class certification under Federal Rule 23.

35. The class Plaintiff seek to represent (the "Class") is defined as follows:

> All consumers in the United States who, during the applicable statute of limitations period for each claim asserted, (a) had their bank accounts debited by Defendant after canceling their subscription service and/or without valid authorization, or (b) were enrolled in Defendant's automatically renewing subscription plan for Kami Cloud or related services without receiving proper disclosures, affirmative consent, or cancellation confirmation, through the date of class certification.

36. As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

37. Defendant, their employees and agents are excluded from The Class. Plaintiff

does not know the number of members in The Class, but believe the Class members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

38. In addition, Plaintiff seeks to represent the subclass (the "California subclass") defined as follows:

> All consumers in California who, during the applicable statute of limitations period, were (a) debited by Defendant after cancellation of service and/or without valid authorization, or (b) enrolled in an automatically renewing plan for Kami Cloud or related services without receiving ARL-compliant disclosures, consent, acknowledgment, or cancellation confirmation, through the date of class certification.

39. Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

40. Upon information and belief, the proposed Class consists of thousands of consumers nationwide. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of The Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that The Class includes hundreds, if not thousands, of members. Plaintiff alleges that The Class members may be ascertained by the records maintained by Defendant.

41. No violations alleged in this complaint are contingent on any individualized interaction of any kind between class members and Defendant.

42. Rather, all claims in this matter arise from Defendant's uniform practices of initiating unauthorized debits after cancellation, obstructing cancellation through inducements and delay, failing to honor refund receipts, and retaining consumer funds without legal entitlement.

43. There are common questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members and include, but are not necessarily limited to, the

following:

(a) Whether Defendant initiated recurring electronic fund transfers from Class members' bank accounts after cancellation of service and/or without valid authorization;

(b) Whether Defendant obtained written authorization, signed or similarly authenticated, from Class members for such recurring electronic fund transfers, as required by 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b);

(c) Whether Defendant provided Class members with a copy of the authorization at the time the recurring transfers were authorized, as also required by Regulation E;

(d) Whether the electronic fund transfers initiated by Defendant were unauthorized within the meaning of the EFTA and applicable regulations due to the absence of such written authorization;

(e) Whether Defendant engaged in a practice of continuing to initiate recurring electronic fund transfers after consumers withdrew their authorization and/or canceled the underlying purchase;

(f) Whether Defendant made misrepresentations regarding billing, refunds, or cancellation procedures;

(g) Whether Defendant profited from unauthorized debits and false refund receipts;

(h) Whether Defendant's conduct constitutes violations of the Electronic Funds Transfer Act, the Unfair Competition Law, and/or Conversion;

(i) Whether Defendant violated California's Automatic Renewal Law by failing to present automatic renewal terms in a clear and conspicuous manner, failing to obtain affirmative consent, failing to provide an acknowledgment with required terms, and charging consumers after cancellation;

(j) Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

(k) Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

(l) The method of calculation and extent of damages for Plaintiff and Class Members.

44. As consumers whose bank accounts were debited by Defendant after cancellation of service and/or without valid written authorization for preauthorized electronic fund transfers,

Plaintiff is asserting claims that are typical of the Class.

45. Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

46. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

47. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

48. Defendant has acted or refused to act in respects generally applicable to The Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

49. Defendant failed to comply with the authorization and notice requirements of § 907(a) of the EFTA, 15 U.S.C. § 1693e(a), as well as related obligations under California law, with respect to the Class members.

50. Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

51. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in

advance to recur at substantially regular intervals."

52. Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

53. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

54. In multiple instances, Defendant debited the bank accounts of Class members on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

55. In multiple instances, Defendant debited Class members' bank accounts on a recurring basis without providing a copy of the written authorization to the consumer at the time of authorization, also in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

56. The size and definition of the Class can be identified through Defendant's internal records and/or records maintained by Defendant's payment processors or agents.

## COUNT I:

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

**-On Behalf of Plaintiff and the Nationwide Class-**

57. Plaintiff reincorporates by reference all of the preceding paragraphs as though fully set forth herein.

58. Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), provides that a preauthorized electronic fund transfer from a consumer's account may

be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made.

59. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

60. Regulation E, 12 C.F.R. § 1005.10(b), provides that preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization must provide a copy to the consumer.

61. The Official Staff Interpretations to Regulation E, 12 C.F.R. Part 1005, Supplement I, further clarify that the authorization process should evidence the consumer's identity and assent to the authorization. The authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable.

62. In multiple instances, Defendant debited Plaintiff and Class Members' bank accounts on a recurring basis without first obtaining a written authorization signed or similarly authenticated, and without providing a copy of such authorization to the consumer, in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

63. In multiple instances, Defendant has debited Plaintiff's and the putative Class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or the putative Class members for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, in further violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

## COUNT II:

## VIOLATION OF THE AUTOMATIC RENEWAL LAW

**(Cal. Bus. & Prof. Code §§ 17600 *et seq.*)**

**-On Behalf of Plaintiff and the California Subclass-**

64. Plaintiff incorporates by reference all of the above paragraphs of the Complaint as though fully stated herein.

65. California Business and Professions Code § 17602 requires businesses to provide consumers with an easy-to-use mechanism for cancellation and prohibits charging a consumer's account for an automatically renewing plan without first obtaining affirmative consent. Defendant violated these requirements and continued charging Plaintiff after cancellation, in violation of § 17602(a)(1)-(3).

66. By engaging in the conduct described above, Defendant unlawfully made automatic renewal and continuous service offers to consumers without complying with the mandatory disclosure, consent, acknowledgment, and cancellation requirements of California's Automatic Renewal Law.

67. Plaintiff has suffered injury in fact and lost money as a result of Defendant's violations alleged herein.

**COUNT III:**

**VIOLATION OF THE UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**

**-On Behalf of Plaintiff and the California Subclass-**

68. Plaintiff incorporates by reference each allegation set forth above.

69. Actions for relief under the Unfair Competition Law ("UCL") may be based on any business act or practice that falls within its broad definition. Violations of the UCL occur as a result of unlawful, unfair, or fraudulent business acts and practices. To establish standing, a plaintiff must show a causal connection between a defendant's business practices and the alleged harm—that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers both isolated misconduct and ongoing practices.

**UNFAIR**

70. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as

alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

71. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

72. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the California Subclass. Plaintiff and California Subclass Members have suffered injury in fact by having their bank accounts debited without authorization after cancellation, being deprived of timely refunds, and incurring overdraft fees and related financial harms.

73. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Defendant's deception led Plaintiff and members of the California Subclass to believe that billing would cease upon cancellation of service and return of equipment, and that refunds would be promptly issued. In reality, Defendant continued to debit consumers' bank accounts without authorization, failed to honor promised refunds, and unfairly profited from retaining funds to which it had no lawful entitlement.

74. Finally, the injury suffered by Plaintiff and members of the California Subclass is not an injury that these consumers could reasonably have avoided. After Defendant falsely represented that billing would cease upon cancellation and that refunds had been or would be processed, these consumers suffered injury in fact due to Defendant's unauthorized debits and failure to return funds. Defendant failed to take reasonable steps to ensure that charges were stopped after cancellation, and failed to provide Plaintiff and California Subclass Members with timely and accurate information regarding their refunds. As such, Defendant took advantage of

its superior position and control over consumers' bank accounts to deceive Plaintiff and the California Subclass into believing their accounts were settled, while continuing to withdraw or retain funds. Therefore, the injury suffered by Plaintiff and members of the California Subclass is not an injury which these consumers could reasonably have avoided.

75. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

76. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

77. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

78. Here, not only were Plaintiff and the California Subclass members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff and California Subclass Members relied on Defendant's assurances that billing would cease upon cancellation and that refunds would be promptly processed. In reality, Defendant continued to debit consumer accounts after cancellation and failed to issue refunds as represented. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

79. As explained above, Defendant deceived Plaintiff and other California Subclass Members by failing to issue proper cancellation confirmations and refunds as promised, while in reality continuing to debit accounts and retain funds after the cancellation request was made. Plaintiff and the California Subclass were led to believe that billing would cease upon cancellation, but Defendant continued to charge consumers' bank accounts without authorization

and failed to issue any refunds, creating confusion and harm.

80. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

81. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

82. As explained above, Defendant engaged in unlawful conduct including (a) initiating or continuing preauthorized electronic fund transfers without valid written authorization and/or after authorization was revoked in violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Regulation E, 12 C.F.R. § 1005.10; (b) making misleading representations regarding post-cancellation billing and refunds in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), (9), (14), and (16); and (c) wrongfully exercising dominion over Plaintiff's and Class Members' funds in violation of California common-law conversion.

83. Defendant also used deceptive statements and omissions regarding cancellation, billing cessation, and refunds to induce Plaintiff and California Subclass Members to believe that their accounts were properly canceled, and that no further charges would be made. Defendant further induced consumers to leave bank account access in place by actively diverting cancellation requests with promotions and offers, rather than processing cancellation. As a result, Plaintiff and Class Members left their bank-account access in place, believing that no further debits would occur. This deception prevented consumers from disputing charges promptly and led to unauthorized debits, resulting in economic harm. These predicate violations of federal and state law—together with Defendant's wrongful retention of funds—constitute "unlawful" business acts or practices under Business and Professions Code Section 17200 *et seq.*

84. The foregoing predicate violations and wrongful acts are therefore "unlawful" within the meaning of the UCL.

85. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and California Subclass Members to judgment and equitable relief against

Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and California Subclass Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**COUNT IV:**

**CONVERSION**

**(Common Law)**

**-On Behalf of Plaintiff and the Nationwide Class -**

86. Plaintiff incorporates by reference each allegation set forth above.

87. Plaintiff and Class Members had a possessory right and interest in the funds held in their bank accounts.

88. Defendant intentionally and substantially interfered with Plaintiff's and Class Members' property by wrongfully debiting their bank accounts without valid authorization, by continuing to debit accounts after cancellation of service, and by failing to return funds despite issuing refund acknowledgments.

89. Defendant's wrongful exercise of dominion and control over Plaintiff's and Class Members' funds deprived them of their use and possession, and was inconsistent with Plaintiff's and Class Members' rights in that property.

90. As a direct and proximate result of Defendant's conversion, Plaintiff and Class Members suffered damages, including but not limited to the loss of funds wrongfully debited, overdraft fees, disruption of bill payments, and time and expense incurred to dispute the unauthorized charges.

91. Plaintiff and Class Members are therefore entitled to restitution of the wrongfully taken funds, damages in an amount to be proven at trial, and any other relief permitted by law.

**REQUEST FOR JURY TRIAL**

92. Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

93. Plaintiff, on behalf of himself and the Nationwide Class and the California Subclass, respectfully request that judgment be entered against Defendant as follows:

(a) That this action be certified as a class action on behalf of the Class and Subclass, and that Plaintiff be appointed as Class Representative;

(b) Actual damages as permitted by law, including but not limited to damages under the EFTA;

(c) Restitution and disgorgement of all monies improperly obtained or retained by Defendant, including all unauthorized debits and funds wrongfully retained after cancellation;

(d) Statutory damages as authorized by the Electronic Fund Transfer Act, 15 U.S.C. § 1693m, and any other applicable statute;

(e) Punitive and exemplary damages as allowed by law, including under California common law, in an amount to be determined by the Court or jury;

(f) Public injunctive relief under the UCL and ARL to stop Defendant's ongoing unlawful billing practices;

(g) Reasonable attorneys' fees and costs pursuant to the EFTA, Cal. Code Civ. Proc. § 1021.5, or as otherwise provided by statute, common law, or the Court's inherent authority;

(h) Such other and further relief, both general and specific, legal and equitable, as this Court deems just and proper.

Dated: January 20, 2026

Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN , P.C.**

By: /s/Todd M. Friedman, Esq.
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff